```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN McKEEVER, on behalf of himself and all others     :
similar situated,                                      :   No.: 26 Civ. 1476
                                                       :
                    Plaintiff,                         :   CLASS AND
          - against -                                  :   COLLECTIVE ACTION
                                                       :   COMPLAINT
AMERIVENTS CATERING LLC,                               :
                                                       :
                    Defendant.                         :
------------------------------------------------------------------------X
```

Plaintiff John McKeever, on behalf of himself and all others similarly situated ("Plaintiff"), by and through his attorneys Kessler Matura P.C., complaining of Amerivents Catering LLC ("Defendant"), alleges as follows:

## **INTRODUCTION**

1. Defendant operates a hospitality-staffing company known as Amerivents or Amerivents Staffing.

2. Defendant employs hospitality workers at catered events, such as servers, bartenders, cooks, utility workers, attendants, runners, and porters (collectively, "Hospitality Workers").

3. Defendant employed Hospitality Workers, such as Plaintiff, to work the Ryder Cup at Bethpage Black, in Farmingdale, New York, from September 21, 2025, through September 28, 2025 ("Ryder Cup Workers").

4. Plaintiff and his fellow Ryder Cup Workers worked in private, catered suites, serving food and drinks to attendees with access to these private areas.

5. The suite customers were charged 20% gratuity on top of the total bill, which was intended as compensation for the Ryder Cup Workers.

1

6. In violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"), Article 6, Defendant failed to pay Ryder Cup Workers their earned tips.

7. Defendant also offered the Ryder Cup Workers an attendance incentive bonus in which Ryder Cup Workers would receive additional pay for perfect attendance ("Attendance Bonus"). Defendant, however, without good cause, failed to pay and unduly withheld the Attendance Bonus from the Ryder Cup Workers, in violation of Article 6 of NYLL.

8. Defendant also did not factor the Attendance Bonuses into the Ryder Cup Workers' overtime rate calculation. As a result, Defendant did not lawfully provide the Ryder Cup Workers with the full value of their overtime wages in violation of the FLSA and NYLL, Article 19.

9. Plaintiff now brings the First and Second Cause of Action, pursuant to Section 216(b) of the FLSA, on behalf of all Ryder Cup Workers who elect to opt-in into this action (the "Collective").

10. Plaintiff brings the Third, Fourth, and Fifth Causes of Action, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all individuals all Ryder Cup Workers (the "NYLL Class") (together with the Collective, the "Class" or "Class Members").

## JURISDICTION & VENUE

11. Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331 and 29 U.S.C. § 216(b).

12. This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in Nassau County.

13. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES

*Plaintiff*

14. Plaintiff is a resident of Suffolk County, New York.

15. Plaintiff was employed by Defendant as a Ryder Cup Worker.

16. For the workweek starting on September 20, 2025, and ending on September 26, Plaintiff worked 52.75 hours.

17. Defendant paid Plaintiff $22 an hour for his 40 regular hours and $33 an hour for his 12.75 overtime hours.

18. Plaintiff worked 28.75 hours during the subsequent workweek.

19. Defendant employed him as a Suite Attendant in 15N Chalet 107.

20. To fulfil his duties as a Suite Attendant, Plaintiff was required to: set up and break down the buffet for breakfast, lunch, and dinner; clean the suites; assist other Ryder Cup Workers in bringing food across the grounds to drop it off at the suites; and otherwise tending to the customers in the suite.

21. While working for Defendant, Plaintiff was advised by staff on site and the suite hosts that a 20% gratuity was added onto each customer's bill.

22. Defendant, however, did not pay him his earned tips.

23. Plaintiff worked all of his assigned shifts as Ryder Cup Worker. As a result, he was entitled to the Attendance Bonus.

24. After the Ryder Cup, Plaintiff complained to Amerivents over the course of several emails that he had not been paid his tips.

25. Defendant paid Plaintiff his Attendance Bonus on November 14 but never paid him his tips.

26. Defendant paid Plaintiff his Attendance Bonus at a flat $300 rate. Defendant did not factor the Attendance Bonus into the calculation of Plaintiff's overtime rate and thus underpaid Plaintiff for his 12.75 overtime hours.

27. Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

28. Plaintiff was an "employee" within the meaning of N.Y. Lab. Law §§ 190(2), 651(5), and 12 N.Y.C.R.R. § 146-3.2.

29. Plaintiff was a "manual worker" within the meaning of the NYLL.

*Defendant*

30. Defendant is a domestic limited liability corporation.

31. Defendant is authorized to do business pursuant to the laws of the State of New York.

32. Defendant owns and operates Amerivents, also known as Amerivents Staffing.

33. Defendant's primary place of business is 1776 Broadway, Suite 1501, New York, NY 10019.

34. Defendant maintains control, oversight, and direction over its operations and employment practices.

35. Defendant maintained control, oversight, and direction over the putative Class Members, including timekeeping, payroll and other employment practices that applied to them.

36. The activities of Defendant constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

37. Defendant employs employees, including Plaintiff, who regularly engage in commerce or in the production of goods for commerce or in handling, selling or otherwise working

on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

38. Defendant's employees, including Ryder Cup Workers, handled and served food and beverage items that were brought to the Ryder Cup from out of state or otherwise moved through channels of interstate commerce.

39. Ryder Cup Workers worked with and served alcoholic beverages, for example, imported from across the United States and abroad, such as Michelob Ultra, Elijah Craig bourbon, and Willaim Hill Estate wines.

40. Defendant's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

41. Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d).

42. Defendant is an "employer" within the meaning of the N.Y. Lab. Law §§ 190(3) and 651(6).

## COLLECTIVE ACTION CLAIMS

43. Upon information and belief, there are approximately more than 500 members of the Putative Collective that are similarly situated to the Plaintiff who were denied overtime pay or were not paid their earned tips.

44. Defendant withheld overtime wages and tips from Plaintiff and the other putative Collective Action members.

45. Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiff and the Collective, on their regular payday, inclusive of overtime wages.

46. The Collective is readily identifiable and locatable through the use of the Defendant's records. The Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Collective, who have been unlawfully deprived of earned wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## CLASS ACTION ALLEGATIONS

47. The persons in the NYLL Class are so numerous that joinder of all members is impracticable. Further, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

48. Upon information and belief, the size of the Class is at least 500 individuals.

49. Over the course of any given week, Defendant employ dozens of Class Members.

50. This matter is properly maintainable as a class action under Rule 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the putative Class, including but not limited to:

    a. whether Defendant was required to pay Plaintiff and the Class Members tips for services provided at the Ryder Cup;

    b. whether Defendant failed to pay Plaintiff and the Class Members all earned tips;

    c. whether Defendant was required to pay Plaintiff and the Class Members an Attendance Bonus and any overtime wages resulting from the payment of the Attendance Bonus;

    d. whether Defendant failed to pay Plaintiff and the Class Members the Attendance Bonus when due;

    e. whether Defendant failed to pay Plaintiff and the Class Members the overtime wages on the Attendance Bonus; and

  f.  whether Defendant's failure to pay Plaintiff and the Class Members all wages due was based on a reasonable, good-faith belief that its payroll practices complied with the NYLL.

51. Plaintiff fairly and adequately protects the interests of and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class-action and employment litigation.

52. A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in court against the corporate defendant. The damages sustained by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

53. Further, Plaintiff and the Class have been equally affected by Defendant's failure to pay proper wages.

54. Members of the Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

55. Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

56. Plaintiff's claims are typical of those of the Class. Plaintiff and the other Class Members were subjected to Defendant's policies, practices, programs, procedures, protocols, and plans alleged herein concerning the failure to pay proper wages.  Plaintiff's job duties are typical of those of the class members.

## COMMON FACTUAL ALLEGATIONS

*Tips*

57. Defendant employed Ryder Cup Workers to cater and staff suites at the Ryder Cup.

58. Guests at the Ryder Cup paid a gratuity o Defendant for Ryder Cup Workers.

59. Plaintiff was told that the suite customers paid a 20% gratuity, which was intended for the Ryder Cup Workers.

60. Upon information and belief, Defendant either: (a) applied an administrative charge in the amount of approximately 20% of the cost of the suite, which a reasonable customer would have understood the charge to be in the nature of a gratuity; or (b) guests directly paid tips to Defendant as part of their bill that were intended for Ryder Cup Workers.

61. If this charge was not a gratuity, Defendant failed to validly disclaim that the charge was not a gratuity for the staff.

62. Plaintiff, and other members of the Class, were not paid a portion of the gratuities.

63. Plaintiff and other Ryder Cup Workers repeatedly complained to Defendant that they had not received their tip, but Defendant did not pay them.

64. Plaintiff and the other members of the Class were non-managerial workers paid an hourly wage.

*Attendance Bonuses*

65. Plaintiff and Class Members spent the majority of their time performing physical work. Ryder Cup Workers' duties included: serving food and drink to Suite guests, cleaning up after guests, and preparing food and drink for Suite guests.

66. Defendant described the requirements for Ryder Cup Workers as follows:

What We're Looking For:
- Entry level position; experience not required for select positions
- Professional, adaptable, and radiate positivity team players

- Composure under pressure and ability to adapt to dynamic environments
- Flexible and reliable team players who can seamlessly adjust to varying roles and tasks
- Ability to lift 50 lbs and stand for extended periods
- Must be 18+ years of age

67. As such, Plaintiff and other Ryder Cup Workers were Manual Workers entitled to be paid their wages within seven days after the end of the workweek under the New York Labor Law.

68. Defendant promised to pay Plaintiff and other Ryder Cup Workers an Attendance Bonus at the time they hired them.

69. The Attendance Bonus was intended to encourage Ryder Cup Workers to work all shifts Defendant assigned them.

70. Plaintiff and other Ryder Cup Workers were not paid the Attendance Bonus after meeting the attendance requirements. That is, even though the final workweek ended on October 3, 2025, Defendant did not pay Plaintiff and other Ryder Cup Workers their Attendance Bonus on October 10, 2025, when Defendant paid them their hourly wages.

71. Plaintiff and, upon information and belief, other Ryder Cup Workers were not paid the Attendance Bonus until November 14, 2025.

72. Other Ryder Cup Workers still have not received their promised Attendance Bonus.

73. Ryder Cup Workers, given the long schedules associated with working the Ryder Cup, worked over 40 hours in the first workweek of the Ryder Cup. For example, Plaintiff worked 52.75 hours during that week.

74. Defendant, however, did not pay Plaintiff and other Ryder Cup Workers one-half the increase to their hourly wage resulting from the payment of the Attendance Bonus.

9

75. Plaintiff and the Class Members are non-exempt employees entitled to overtime but were not paid all overtime wages due.

***Defendant Acted Willfully***

76. Defendant has been the subject of numerous wage-and-hour lawsuits since 2010, including: *Yahraes v. Rest. Assoc. Events Corp, et al.*, No. 10 Civ. 935 (E.D.N.Y.); *Naula v. Amerivents Catering, LLC*, Index No. 655092/2018 (Sup. Ct. N.Y. Cnty.); *Naula v. Upper Story LLC, et al.*, Index No. 652170/2021 (Sup. Ct. N.Y. Cnty.); *Wells v. Amerivents Catering, LLC*, Index No. 609923/2018 (Sup. Ct. Nassau Cnty.); *Kromah v. Amerivents Catering LLC*, No. 1:23 Civ. 8152 (S.D.N.Y).

77. In *Yahraes* the plaintiffs, sued on behalf of all Suite Attendants who worked the U.S. Open from 2004 to 2009. They alleged that the defendants, including Amerivents, failed to pay them overtime wages, spread-of-hours pay, and all their earned gratuities.

78. In *Naula*, the plaintiff brought claims against the defendants, including Amerivents, on behalf of a New York class composed of bartenders, waiters, and caterers employed by defendants. They alleged that the defendants failed to pay them overtime wages or provide accurate wage notices and wage statements.

79. In *Wells*, the plaintiff alleged that Defendant unlawfully retained tips and gratuities under the NYLL. Notably, they allege Defendant maintained a practice of billing its catering customers for "mandatory charges," which reasonable customers would understand to be a gratuity, and then withholding the proceeds of those charges from their service workers.

80. In *Kromah*, the plaintiff alleged that she and other employees, among other things, weren't paid their earned tips, including for work performed at the Kentucky Derby in 2023.

81. Defendant is a sophisticated company with a Human Resources department.

82. The federal and state government make information related to the payment of tips and overtime rates publicly available.

## FIRST CAUSE OF ACTION
### FLSA – Failure to Pay Tips
### (On Behalf of Plaintiff and the Collective)

83. Plaintiff incorporates by reference all preceding allegations.

84. The FLSA requires employers to promptly pay wages to employees.

85. The FLSA provides that an employer may not keep tips received by its employees for any purpose. *See* 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. § 531.54(b)(2).

86. The FLSA applies to Defendant and covers Plaintiff and the Collective.

87. Defendant did not pay Plaintiff and the Collective their tips on the regular payday for the workweek in which the tips were earned or at time thereafter.

88. Plaintiff and the Collective suffered injuries due to Defendant's failure to pay such tips, including, but not limited to, the loss of the time value of money and the inability to invest, earn interest on, or otherwise use the untimely paid wages.

89. Defendant's violations of the FLSA were willful.

90. Defendant's violations of the FLSA were not reasonable, good-faith errors.

91. Due to Defendant's violations of the FLSA, Plaintiff and the Collective are entitled to damages from Defendant due to such underpayments caused by Defendant's violations of FLSA for the entire Collective period. Such damages include, but are not limited to, unpaid tips, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**FLSA – Failure to Pay Overtime Wages**
**(On Behalf of Plaintiff and the Collective)**

92.     Plaintiff incorporates by reference all preceding allegations.

93.     Plaintiff and members of the FLSA Collective were employees entitled to be paid at an overtime rate that was inclusive of all bonuses.

94.     Defendant employed Plaintiff and members of the FLSA Collective for workweeks in which Plaintiff and members of the FLSA Collective were not paid at an overtime rate inclusive of a non-discretionary bonus by the FLSA.

95.     Defendant failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiff and the FLSA Collective.

96.     Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

97.     As a consequence of the willful underpayment of wages, alleged above, Plaintiff and members of the FLSA Collective incurred damages thereby and Defendant is indebted to them in the amount of the unpaid minimum wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**NYLL – Failure to Pay All Earned Tips**
**(Brought on behalf of the Plaintiff and the Class)**

98.     Plaintiff incorporates by reference all preceding allegations.

99.     Pursuant to Section 196-d of the NYLL, and the supporting Hospitality Wage Order, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee,

or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." *See* N.Y. Lab. L. § 196-d.

100. Pursuant to Section 146-2.18(b) of the Hospitality Wage Order, "[t]here shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity." *See* 12 N.Y.C.R.R. § 146-2.18(b).

101. Sections 193 of the NYLL provides that "[t]here is no exception to liability under [Section 193] for the unauthorized failure to pay wages, benefits or wage supplements." N.Y. Lab. L. § 193(5)

102. Section 198 similarly provides that "[t]here is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." N.Y. Lab. L. § 198(3).

103. Defendant employed Plaintiff and the members of the Class and willfully failed to distribute gratuities or tips to Plaintiff and the members of the Class, as required by the NYLL and Hospitality Wage Order.

104. Pursuant Section 146-2.19(b) of the Hospitality Wage Order, "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification [via a disclaimer] was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." *See* 12 N.Y.C.R.R. § 146-2.19(b).

105. Defendant has a policy and practice of failing to clearly identify a charge for the administration of a banquet, special function, or package deal as such, thereby failing to notify customers that the charge is not gratuity or tip.

106. Defendant unlawfully kept gratuities (tips) earned by Plaintiff and Class Members, either by applying Administrative Charges to customers' bills, which customers reasonably expected to be paid to Plaintiff and Class Members, or by otherwise failing to pay Plaintiff and Class Members such gratuities.

107. Defendant's failure to pay these wages to Plaintiff and the members of the Class was not done in good faith within the meaning of Sections 198 of the NYLL.

108. Because of these underpayments of wages, alleged above, Plaintiff and the Class have incurred damages thereby and the Defendant is indebted to them in the amount of the unpaid wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**NYLL – Overtime Wages**
**(Brought on behalf of Plaintiff and the Class)**

109. Plaintiff incorporates by reference all preceding allegations.

110. Plaintiff and Class Members are employees entitled to be paid no less than the applicable overtime wage.

111. Defendant employed Plaintiff and Class Members for workweeks in which Plaintiff and Class Members were not paid at an overtime rate inclusive of a non-discretionary bonus by the NYLL.

112. By the course of conduct set forth above, Defendant violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. §§ 142-2.1, 2.9.

113. Defendant had a policy and practice of refusing to pay the proper overtime wage.

114. Defendant's failure to pay overtime compensation at the proper rate to Plaintiff and the Class was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

115. As a consequence of the willful underpayment of wages, alleged above, Plaintiff and Class Members incurred damages thereby and Defendant is indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

116. Plaintiff, on behalf of himself and the Class, seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendant as provided by the NYLL.

### FIFTH CAUSE OF ACTION
### NYLL – Unpaid and Late-Paid Wages
### (Brought on behalf of the Plaintiff and the Class)

117. Plaintiff incorporates by reference all preceding allegations.

118. Defendant employed Plaintiff and the members of the Class and willfully failed to compensate Plaintiff and the members of the Class all earned wages, as required by the NYLL.

119. By the course of conduct set forth above, Defendant violated the NYLL by failing to pay Plaintiff and the Class Members all wages which they earned. *See* N.Y. Lab. L. §§ 190, et seq., 650, et seq. and 12 N.Y.C.R.R. § 146-1.1, *et seq.*

120. Defendant had a policy and practice of refusing to pay Plaintiff and the Class Members all earned wages.

121. Defendant's failure to pay all earned wages to Plaintiff and the members of the Class was not done in good faith within the meaning of Sections 198 and 663 of the NYLL.

122. Because of these underpayments of wages, alleged above, Plaintiff and the Class have incurred damages thereby and the Defendant is indebted to them in the amount of the unpaid wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief:

A. Collective action certification of this case, permitting the issuance of notice to the Collective and permission for putative Collective members to opt into this case;

B. Certification of this case as a class action pursuant to Rule 23;

C. Designation of Plaintiff as the class representative, and counsel of record as class counsel;

D. Unpaid wages that were unlawfully deducted, reduced, and withheld pursuant to the FLSA and NYLL;

E. Liquidated damages;

F. Pre-judgment interest and post-judgment interest as provided by law;

G. Appropriate equitable and injunctive relief to remedy violations;

H. Attorneys' fees and costs;

I. A declaratory judgment that the practices complained of are unlawful;

J. A reasonable incentive award for Plaintiff to compensate him for the time he spent and for the risks he took attempting to recover wages for the Class; and,

K. Any other injunctive, equitable, or such relief as this Court deems just and proper.

Dated: Melville, New York
March 13, 2026

Respectfully submitted,

Garrett Kaske

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, New York 11747
(631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiff and the Putative Class and Collective Actions*

16

# Exhibit A

**CONSENT TO BECOME A PARTY-PLAINTIFF**

1. I consent to be a party plaintiff in a lawsuit against my former employer, Amerivents Catering LLC ("Defendant"), and any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the New York Labor Law.

2. During the past three years, there were occasions when Defendant did not pay me as required by the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Defendant and/or any related entities potentially liable.

Date: 03 / 13 / 2026

Signature: *[signed]*

Print Name: John McKeever

Doc ID: 0206fedb26f2f55b2f5ad6989cc508ebf955d58c